Case No. 22-5312, Nikki Grae et al. v. Corrections Corporation of America et al. Oral argument, 15 minutes per side. Mr. Horwitz for the appellant. You may proceed, Mr. Horwitz. Good afternoon, Your Honors. And may it please the Court, Daniel Horwitz of the Nashville Bar on behalf of the prospective intervener in this matter, Mr. Eddie Tardy. With the Court's permission, I would like to reserve three minutes for rebuttal, please. Yes. Your Honors, this is a case about a district court that issued more than a dozen uniformly unreasoned sealing orders. Those orders resulted in the mass sealing of thousands of pages of documents bearing on issues of extraordinary public concern and class action litigation involving a government contractor. Because those unreasoned sealing orders failed to set forth specific findings and conclusions of law as to why the interest-supporting sealing were compelling, why the interest-supporting access were less so, and why the seal itself was no broader than necessary, all of them must be vacated. Before I get to the merits of this case, though, I gathered from the Court's order a few weeks ago that the panel is interested in the issue of whether interveners have standing to seek document unsealing. The answer to that question is yes. Indeed, the U.S. Supreme Court itself just granted such a motion in Price v. Dunn. The citation on that is 139 Supreme Court 2764. It's a case from 2019, holding that the motion of NPR and other media entities for leave to intervene to file a motion to unseal was granted and that the intervener's motion to unseal itself was granted. So that's an offer. Counsel, can I ask you a question? Because I'm just trying to understand what adverse consequences you've alleged to have suffered as a result of being denied this information. So the question is not, at least in our view, adverse consequences. There is a common law right to access and review judicial records, and Mr. Tardy would like to exercise that right but cannot do so because the records are sealed. Right, but so are you familiar with the case of Aikens, the Supreme Court case? I apologize, Your Honor, no. Okay, so FEC v. Aikens is a case, I recognize that no one cited it, which surprised me. It's a case about access to public documents and what the Supreme Court said in TransUnion in discussing that case is you not only need a right, and I was with you, but when I read this paragraph from TransUnion, it gave me pause, and I want you to explain to me how you've met this. It's in TransUnion in discussing Aikens and public citizen. The court says that you can have a public disclosure law, as in Aikens, or here as the common law right, that gives you a right to access. But you also, it says, moreover, the plaintiffs have identified no downstream consequences from failing to receive the required information. They did not demonstrate, for example, the alleged information deficit hindered their ability to correct erroneous information before it was later sent to third parties. That's in TransUnion. And then they say, and they're quoting Judge Katz's from an 11th Circuit case, an inserted informational injury that causes no adverse effects cannot satisfy Article III. So my question is, apart from being denied access to the documents, what adverse consequences have you alleged? So I don't believe we've alleged adverse consequences other than not being able to exercise a common law right to access, review, and then disseminate the information that is in these sealed judicial records. So in this trickle case, Judge Katz is writing on the 11th Circuit, interestingly enough, says that's not enough. And he is discussing Aikens, which is this exact line you're pursuing. And then he is cited with approval in TransUnion. Your Honor, I may be misunderstanding the context here. There is certainly a difference between asserting Article III jurisdiction based on a statutory cause of action, asserting damages, or some other cognizable claim that's within this court's Article III jurisdiction related to document production. And what the Fourth Circuit has explained is the right of access, widely shared among the press and the general public alike, such that anyone who seeks and is denied access to judicial records sustains an injury. That's the issue. Right, but the Fourth Circuit, you're talking about the 2014 case, we've preceded TransUnion. The Fourth Circuit was of Aikens. And then TransUnion added this factor that Judge Katz has identified in trickle. In the context of a claim independently or a statutory claim that's invoking Article III jurisdiction, is that correct? So for instance, yes. That is different than the common law right of access. So let me try to step back and think about this the best way that I can. Suppose somebody files a lawsuit in federal court that the federal court ultimately denies for lack of subject matter jurisdiction. And then within the context of that litigation, there are a bunch of sealed records. The court has determined it does not have Article III jurisdiction over the underlying subject matter, but certainly the sealed records, which are judicial documents, which every member of the public has an individual right to access, implicate an individual participant's ability to come in and say, I need to be able for transparency interests and for the interests of the public at large in ensuring that judicial decisions are made based on what the judges are saying that they're making. So could every citizen in America sue to get access to a PSR, a pre-sentence report in a criminal case? I mean, obviously there's a difference between having a meritorious claim and being able to- I understand that. Would they have standing is my question. I believe every individual member of the public has a right to ask for presumptively public judicial records. Now, if those records are ultimately determined that they should not be turned over to the public, that they should be sealed based on the heavy requirements that support sealing, that is one thing. But certainly this is a right that belongs to each individual member of the public to ask the court for access to its records. And just one more question. I'll be quiet. So there's no- you have not, just so I understand it, you have not alleged any adverse consequences, correct? Not adverse consequences in terms of damages to Mr. Tardy, no. And so if that is a requirement, you lose, correct? Yes, your honor. I think that would be correct. I will say this. When panel members are disclosed, I like to go back and I like to find what the panel members have previously said about the issues presented. And when I did that here, I will say that I stumbled across this fabulous district court opinion out of the Eastern District of Kentucky in 2016. The case was In Ray Black Diamond Mining Company, LLC. An opinion by you, your honor. I'm not familiar with it. Quote, should a member of the public want to read the sealed documents, the parties would have the burden of showing why he should not. A court that has sealed a part of a record can always unseal it later. That's citing to Federal Rule Civil Procedure 5.2D. To break the seal then, all RHE litigants in that case needed to do was ask. Your honors, Mr. Tardy is asking here. He has standing to do so individually. By asking, I will also note that Mr. Tardy has also triggered this court's independent obligation to ensure that the And that's something that I want to drill down on, your honor, because I think that even independent of Mr. Tardy's individual standing here, this court still has, should and arguably has an obligation to reach the merits of the sealing questions presented. Anyway, let me tell you why. It is well established that the effective filing of a notice of appeal transfers jurisdiction from the district court to the Court of Appeals as to all matters involved in the appeal, right? Any number of cases from this court have said so. As a result, after a proper notice of appeal was filed below, jurisdiction over this case and the sealed records in it transferred from the district court to this court. Why does that matter? Well, because this court's sealing precedent also holds that a court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody. That's Shane Group Incorporated versus Blue Cross Shield of Michigan, citation on his 825 F3rd 299. And to the extent that there were any ambiguity regarding the matter, this court also clarified it in Rudd Equipment Company versus John Beard Construction, Judge Batshelter, I believe that you were on that panel, where this court characterized a court's obligation to consider the rights of the public's as a quote, independent one. In other words, even if Mr. Tardy were not involved in this case, this court would still have an independent obligation to ensure that the records in this case over which this court currently has jurisdiction were appropriately sealed regardless of whether or not someone here were objecting. In other words, it is not incumbent upon an objector even to participate. Mr. Tardy does not even have to be here. This court would still have to reach the sealing question anyway. We'll also emphasize that this court has done that before. That's exactly what this court did in Brown and Williamson Tobacco Corporation versus FTC, where this court reached the merits of the district court sealing order on its own motion under circumstances when the only litigant involved in the case who opposed sealing was an amicus. Given what this court characterized as the quote, importance of the question, this court thus adjudicated the propriety of sealing sua sponte and on the merits, and it vacated the erroneous sealing orders that the district court had issued below as a result. Did you ask for these documents in your litigation against CoreCivics that you filed September 2nd? No, your honor, that litigation has only just begun. We just had the initial case management order there. Why is that the proper place to ask for these documents? Well, certainly there are differences in your ability to get them via subpoena, relevance, or a likelihood of leading to relevant information as one of them. Production pursuant to a protective order is another, but certainly you can't get sealed documents and then disseminate them, talk about them, review them at length. That is a different, it is a restriction on your ability to use them. Your honor, with my remaining time, unless this court has any additional questions about subsidiary motions, I'd like to briefly turn to the merits before sitting down. As detailed in our briefing, this case presents a review of over a dozen uniformly unreasoned sealing orders that resulted in the mass sealing of thousands of pages of documents. In most cases, those sealing orders were just two words long. Sometimes they were as long as four words, and regardless of length, all of them failed to comply with this court's mandate. The district court set forth specific findings and conclusions as to why the interest in support of nondisclosure and why the interest in supporting access are less so, and why the seal itself is no broader than necessary. Instead, the district court simply deferred to CoreCivic and it scribbled motion granted in the corner of each of its motions to seal. The district court also did so even though CoreCivic's sealing claims were at best perfunctory and at worst factually false and legally irrelevant. For instance, CoreCivic repeatedly asserted that the public's interest in sealed documents was minimal. That is not true and it never has been. CoreCivic also cited the district court's initial denial of class certification as a basis for sealing. For others, that consideration is irrelevant and the order was later reversed anyway. I'd say that my time has expired. I will get to the rest on rebuttal. All right. All right, Mr. Martinez. Good afternoon, your honors, and may it please the court, Roman Martinez for CoreCivic. Mr. Tardy's counsel has now conceded that his client has suffered no adverse consequences from the sealing orders in this case, and he's also conceded that if adverse consequences are required as a matter of law to establish standing, he loses. Those concessions resolve this case. What I think the argument that just came before me makes clear is that Tardy's only asserted interest here is based on the public rights theory that he articulated in his original motion, in his reply brief, and then in his supplemental brief. That theory is basically that because a public right to open access is at issue, any member of the public, anyone in the United States has a right to come in and automatically has standing. That public rights theory is not enough under a long line of Supreme Court cases. Dealing with the true under Aikens. It seems to me under Aikens, it is enough. Well, I think your honor, as you yourself pointed out, I think TransUnion makes absolutely clear what Aikens and Public Citizen, the other case that was sort of implicated, what they stand for. What TransUnion clarifies is that they don't stand for the proposition that the violation of a legal right to access information or to have information itself establishes standing. You need something more. TransUnion says you need downstream adverse consequences. So what more was there in Aikens? Because Agostini says we can't, I guess you would argue TransUnion modified it so we could follow that modification, but set that aside for a second and just look at Aikens. Sure. What more was there in Aikens? Because their right, they wanted the information that the FEC had denied APAC the right or had said APAC's not a political action committee or political committee. And the public wanted information upon which the FEC made that decision. What's the adverse consequence to the individuals? I'm sorry. Sure. Yeah. So I think what TransUnion indicates is it was endorsing Judge Katz's analysis from Trickle. And what Trickle explains is that in Aikens, what the plaintiff wanted there, he wanted the information about APAC's contributors, its contributions, its expenditures, so that it could evaluate candidates for public office and evaluate APAC's and helping them get elected. And so there was a very concrete injury in that sense that without that information, the plaintiff could not do those things. And I think in Public Citizen, similarly, there were downstream adverse consequences that followed from the failure of the Washington Legal Foundation and Public Citizen to get the information about the ABA's process for evaluating judicial nominees. And what I think Trickle says there is that they selection process. And I think what's interesting about TransUnion is it sort of resolved a little bit of a debate and a little bit of confusion that had been about as to how to read Aiken and Public Citizen. And if you look at the briefing in TransUnion, the Solicitor General is the one who asserted the informational injury as the basis for standing. And the Solicitor General's brief in TransUnion at pages 21 to 26 lays out essentially the same theory that Mr. Tardy's here, basically saying, hey, Aiken's and Public Citizen on itself by themselves established that all you need is the deprivation of a legal right to information. And the court expressly rejected that in that passage, that very important passage from TransUnion. Couldn't we argue TransUnion's distinguishable because they got the information, it just wasn't in the format they wanted? Isn't that what TransUnion was really getting at? And so it's different in kind? I don't think so, because I think if you look at the relevant paragraph in TransUnion at page 2214, I think there are three distinct reasons why the SG's argument was rejected. The first one, I think, is that they received it in the wrong format. That's true. But then there were two other reasons that were independent. And one was that those were involved statutes that mandated public disclosure. But most importantly is the final one. It says, moreover, the plaintiffs have identified no downstream consequences from failing to receive the required information. And then it says, and this is, I think, the kind of the money sentence here at the end of the paragraph, and I'm quoting, an asserted informational injury that causes no adverse effects cannot satisfy Article 3. And I think that's the holding in TransUnion that squarely resolves this case, given the concession that Mr. Tardy's counsel has made is that his client suffered no adverse consequences. I think it's also notable the extent to which both at argument and in a supplemental brief, Mr. Tardy relies on the Doe case from the Fourth Circuit, because the Doe case interprets itself, relies on and interprets Aikens and Public Citizen in exactly the same way that the SG's brief did in TransUnion and in exactly the same way that the Supreme Court rejected in its brief. The Doe says everyone has standing here because everyone has a right to get this information and the mere deprivation of the right essentially qualifies as an injury in fact. And again, that's the argument that the Supreme Court rejected. They said, no, that might be an injury in law, but an injury in law isn't enough. You need an actual concrete injury in fact. And so I think the TransUnion decision, which talks specifically about the kind of informational injuries that are being alleged here, combined with a long line of other Supreme Court decisions, including Schlesinger, Hollingsworth, Spokio, all of which say that you need to have a concrete, personalized, individualized injury that doesn't belong to every member of the public. All of those cases, I think, together show that you just don't have Article III standing when you can't allege any sort of concrete, individualized harm. And so I think for all those reasons, Mr. Chardy's public rights theory of standing just does not work here. Can I ask you one question? Did you read Judge Sutton's opinion in Huff v. Talachek? Yes, I did, Your Honor. I think Judge Batchelder was involved in that case as well. Yeah, I think that's another example of a case that helps us because as I'm sure you noticed, when you looked at Trickle, Trickle itself relies on Huff. And so I think it understands Huff to be a decision that itself requires adverse consequences. I think it's a little bit more, it's laid out maybe a little bit more clearly in Trickle, but certainly that view that Judge Katz is writing for the 11th Circuit thought this Court was adopting was certainly the view that the Supreme Court adopted in TransUnion itself when it cited Trickle and when it used all that language that I was quoting earlier. Your Honors, I'm happy to answer any other questions. At one point in this case, it looked like Mr. Chardy was asserting a litigation-related interest, but I think he made clear in his reply brief that he has abandoned that interest. He specifically said in his reply brief that the litigation endorsed the view that we had put forward in our motion, and I think that the District Court had rejected with respect to the first intervener, Ms. Newby. Chardy himself said that litigation-related interests are insufficient to support intervention here. We think that's right. We think that certainly as the District Court pointed out at page four of her order with respect to Ms. Newby's attempted intervention, the individual case, whether it was Newby's case in the first instance or now Mr. Chardy's separate lawsuit against CoreCivic, it's just totally disconnected. It has no nexus to the documents that are at issue here, and so that doesn't provide a basis to conclude that there's harm or a basis to establish standing. In addition, as Your Honor, Judge Depard, as you pointed out, if these documents are somehow relevant to Mr. Chardy's son's death or to his other case, the obvious place for him to seek them would be a discovery in that other case, and I took Mr. Chardy's counsel to potentially getting that because the documents aren't relevant, but if they're not relevant, that just sort of confirms that he doesn't have a concrete interest in having the documents unsealed apart from the generalized interest that any member, any citizen in the United States might have. I'm happy to stop, but if you have any questions, Your Honors, on any of these issues, I'm also very happy to answer any further questions about the standing issues or anything else. It appears we have nothing. All right, Mr. Horwitz. Thank you, Your Honor. I'd like to move back and pinpoint who's conceded what here. I want to note the core civics position is dramatically different on appeal than it was down at the district court where they conceded the standing of Marie Newby, the intervener in that case, who is in an identical posture to Mr. Chardy. I also want to note that TransUnion was a case involving a claim for money damages. That is very different. Can you concede that there is standing? Would we be bound by that? Can I concede that there is standing? In other words, does it, I'm sorry, I should, that was a very poorly phrased question. Can core civic, would the court be bound by core civics concession that there was standing? I think to the extent it involves a fact question as to whether or not somebody in identical factual situation has standing here. Let's say they got it wrong. Would we then on appeal somehow be bound by that in a law of the case way, even though it's an article three requirement? I don't know that you're bound, Your Honor, but I will also just emphasize the fact that regardless of whether there is anyone objecting here, this court still has an independent obligation to reach the merits of this appeal. The reason I wanted to emphasize TransUnion's involvement with money damages is because the issues and the injury in a constitutional sense involved is fundamentally different when you're talking about access to judicial records. As this court held in Brown, Williams and Tobacco Corporation, sealing insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption. In other words, this gives the members of the public individually an is doing its job. That may not result in a monetary injury if they can't do so, but it's certainly an injury in the constitutional sense, and that injury matters here. Here's why. In a footnote of document 165, the district court explained that it had, quote, so far honored the party's confidentiality claims. Now that itself is an error. As this court has explained, district courts are supposed to closely scrutinize confidentiality claims rather than deferentially honoring them. This district court goes on to quote at length from several of the sealed documents because on the one occasion that the district court appears to have been engaged in any kind of meaningful scrutiny of poor civic sealing claims, it found that their asserted justifications for sealing were imaginary. Even so, those documents which the district court quoted at length and characterized still remain sealed despite a specific determination that they do not actually contain any confidential information or trade secrets. Now those are not the only problems either. District court erroneously treated the intervener's motion as one to reconsider rather than requiring sealing proponents to justify the need for continued secrecy based on current evidence, misallocated the burden of persuasion, misallocated the burden of proof, applied an erroneous legal standard, and got the presumption backwards. District court also failed to address the intervener's observations that sealing proponents' claims were untrustworthy. For all of these reasons, the district court erred. The public should be able to check the records. We appreciate the argument that both of you given and we'll consider the matter carefully.